UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JULIE LOCKE                                                                                          Plaintiff

v.                                                                    Civil Action No. 3:18-cv-697-RGJ

HONORABLE DENISE BROWN,                                                                          Defendant
IN HER OFFICIAL CAPACITY

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Judge Denise Brown's Motions to Dismiss [DE 7; DE 12]. Briefing is complete, and the Motions are ripe. For the reasons below, the Motions are **GRANTED**.

### I.     BACKGROUND[1]

Defendant Judge Denise Brown, a judge in Jefferson County Family Court, presided over Plaintiff and Mr. Sallee's divorce and custody proceedings. [DE 1 at 2]. The proceedings, which ultimately escalated to multiple contempt hearings, were contentious.

In July 2017, Mr. Sallee moved Judge Brown to hold Plaintiff in contempt for violating the parenting schedule. [DE 1-1 at 25]. After conducting hearings on the motion in August and November 2017, Judge Brown issued a 16-page written ruling on December 20, 2017 holding Plaintiff in contempt. *Id.* at 23, 36. Plaintiff filed a timely Notice of Appeal of the December 20, 2017 and January 25, 2018[2] orders. [DE 14-2 at 336].

---

[1] "[I]t is well-settled that [f]ederal courts may take judicial notice of proceedings in other courts of record." *Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999) (quoting *Granader v. Public Bank,* 417 F.2d 75, 82–83 (6th Cir. 1969). The parties' pleadings provide an incomplete procedural history of this case. When necessary, the Court has taken judicial notice of the Courtnet record of these proceedings.

[2] This was an Order denying Plaintiff's motion to vacate the December 20, 2017 Order.

1

After further allegations that Plaintiff was non-compliant with the parenting schedule, Judge Brown conducted a hearing and sentenced Plaintiff to "thirty (30) days incarceration . . . conditionally discharged for two (2) years, so long as [Plaintiff] complies with all court ordered parenting time." [DE 14-1 at 330]. Judge Brown entered a written ruling on February 6, 2018. *Id.* Plaintiff filed a timely Notice of Appeal of Judge Brown's February 6, 2018 order. [DE 14-3 at 342].

On February 26, 2018, Judge Brown conducted a hearing on Mr. Sallee's motion to revoke Plaintiff's suspended sentence. [DE 1 at 3]. At the hearing, Plaintiff sought to call Dr. Melissa Curry to testify on her behalf "about the danger unsupervised visitation between [their daughter] and her father posed and the psychological effect of such visitation would have on [their daughter]." *Id.* at 10. Judge Brown did not allow Dr. Curry to testify during the hearing but allowed her to make an avowal afterwards. *Id.* After the hearing, Judge Brown revoked two days of Plaintiff's sentence. *Id.* at 3. Plaintiff alleges that "Defendant's actions in revoking [her] suspended sentence resulted in [her] having a misdemeanor criminal conviction for the supposed contempt of court . . . [Her] contempt, if any, was civil in nature, not criminal." [DE 8 at 209].

Plaintiff then moved to expunge the criminal contempt charge from her criminal record. *Id.* Judge Delahanty, a judge in Jefferson County District Court, granted Plaintiff's expungement motion. *Id.* at 210. Plaintiff alleges that, after Judge Delahanty expunged the charge, "[Judge Brown] initiated *ex parte* communication with Judge Delahanty telling him that he did not have jurisdiction to expunge the Plaintiff's criminal record." *Id.* at 210. Plaintiff further alleges that "[a]fter the Defendant's *ex parte* communication, on September 24, 2018, Judge Delahanty put on his docket, *sua sponte*, a motion to set aside his initial order expunging the Plaintiff's criminal record." *Id.*

Plaintiff moved to set aside Judge Delahanty's reversal. *Id.* At the hearing held on the motion, "Judge Delahanty informed the Plaintiff's counsel that the Judge Brown had made certain representations to him, via text message that he read into the record, indicating that she would sign an order expunging the Plaintiffs criminal record if Judge Delahanty vacated his order." *Id.*

Plaintiff then appeared in front of Judge Brown on her motion to extend an October, 2014 Domestic Violence Order against Mr. Sallee. [DE 1 at 12-13]. Judge Brown continued the hearing for thirty days. *Id.* at 15. At the October 10, 2018 hearing, Judge Brown denied the motion.

Plaintiff then filed this § 1983 action against Judge Brown, in her official capacity, alleging violations of the Fifth and Fourteenth Amendments, and requesting entry of a Declaratory Decree that Judge Brown violated those rights. [DE 1].

Plaintiff's alleges in Count 1 of the Complaint that Judge Brown violated her due process rights by sentencing her to thirty days "because [she] did not violate the conditional discharge order regarding visitation." [DE 1 at 20]. Plaintiff's also alleges in Count 1 of the Complaint that Judge Brown violated her due process rights "by fail[ing] to make findings, either written findings, after stating three (3) times on the record that she would, or any oral findings justifying the revocation of two days of the conditionally discharged sentence and sending Plaintiff to jail for two (2) days." *Id.*

In Count 2 of the Complaint, Plaintiff alleges that Judge Brown violated her due process rights by not allowing her to "call Dr. Melissa Curry as a witness in the revocation hearing which resulted in the Judge Brown's sending the Plaintiff to jail for two (2) days on February 26, 2018." *Id.* Plaintiff further alleges that Judge Brown violated her due process rights by "denying her the right to present avowal testimony at the hearings to extend Plaintiff's DVO against Sallee" (Count 3) and "refusing to allow the Plaintiff to call [their child] as a witness at the DVO extension hearing

to establish that Sallee had asked [their child] the question which resulted in the CPS investigation" (Count 4). *Id.* at 20-21. Plaintiff finally alleges in her Complaint that Judge Brown violated her rights when she: 1) "refused to allow questioning of the CPS employee regarding the signaling which occurred during testimony" (Count 5); and 2) "would not allow any evidence on the allegations of the CPS report other than the 'results' of the investigation, specifically, questioning of Sallee about the allegations of the report" (Count 6). *Id.* at 21.

On November 19, 2018,[3] Judge Brown recused herself from Plaintiff's case in Jefferson County Family Court [DE 7-1 at 194] and moved to dismiss this case [DE 7].

On December 6, 2018, Plaintiff filed a Statement of Appeal from District Court Pursuant to CR 72.10, appealing Judge Delahanty's decision to set aside the expungement of the criminal contempt conviction.

On December 10, 2018, in the present case, Plaintiff filed an Amended Complaint [DE 8][4] and a Response to the Motion to Dismiss [DE 9]. Plaintiff's Amended Complaint, which "incorporates by reference . . . every averment, statement, or allegation contained in the . . . Complaint," and alleges, among other things, that Judge Brown illegally: 1) revoked Plaintiff's suspended sentence, resulting in a misdemeanor criminal conviction for contempt of court; and 2) "initiated *ex parte* communication with Judge Delahanty telling him that he did not have jurisdiction to expunge the Plaintiff's criminal record." [DE 8 at 208–210].

Judge Brown filed a Second Motion to Dismiss [DE 12], Plaintiff responded [DE 13], and Judge Brown replied [DE 14].

---

[3] The recusal Order was entered on January 14, 2019.
[4] "A party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required . . . 21 days after service of a motion under Rule 12(b), (e), or (f)." Fed. R. Civ. P. 15. Defendant filed her Rule 12(b)(6) motion on November 19, 2018. Twenty one21 days later, on December 10, 2019, Plaintiff timely filed his Amended Complaint.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

III.   **DISCUSSION**

Although Judge Brown did not move to dismiss for mootness,[5] "the question of mootness is . . . one which a federal court must resolve before it assumes jurisdiction." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  As discussed below, the Court finds that: 1) the claims in the Complaint and Amended Complaint are moot because Judge Brown recused herself from Plaintiff's underlying state case and thus there is not a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975); and 2) under *Rooker-Feldman*, it lacks subject-matter jurisdiction over at least the first allegation in Count 1 of the Complaint.

Alternatively, even if the claims were not moot and barred in part by *Rooker-Feldman*, the Court would still decline to exercise jurisdiction over them under the Declaratory Judgment Act.

**A.   Mootness**

"The federal courts have an ongoing obligation under Article III to limit their jurisdiction to cases that may actually affect the rights of the litigants." *Robinson v. Purkey*, 326 F.R.D. 105, 133 (M.D. Tenn. 2018)  (citing *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004).  An actual controversy must exist, not just when the complaint is filed, but at all stages of the case. *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 669 (2016), as revised (Feb. 9, 2016).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  "Mootness results when events occur

---

[5] Defendant has moved to dismiss all claims asserted against her arguing that the *Rooker-Feldman* doctrine, the *Younger* doctrine, sovereign immunity, the Declaratory Judgment Act, and the domestic relations exception all bar the Court from hearing this matter.  [DE 7-1 at 196-197].  But, the Court need not rule on all of these grounds since it has found that Plaintiff's claims are moot.

during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) (finding that plaintiff's attempt to enjoin state actors, including justices and judges, became moot when there was "no longer a state court proceeding from which to enjoin the named defendants' participation"). Once a case becomes moot, a district court no longer has jurisdiction over it and must dismiss it. *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009).

A request for declaratory relief is moot unless "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser*, 422 U.S. at 402 (quoting *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273 (1941)) (internal quotation marks omitted). "That a declaration might guide third parties (*i.e.*, those not parties to the lawsuit) in their future interactions with a plaintiff is insufficient." *Jordan v. Sosa*, 654 F.3d 1012, 1026 (10th Cir. 2011). Federal courts do "not render advisory opinions . . . This is as true of declaratory judgments as any other field." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Public Workers of American (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) (internal quotation marks omitted); *see Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 525 (6th Cir. 2012) ("We have no power to offer an advisory opinion, based on hypothetical facts.").

Judge Brown recused from the underlying state case and thus there is no longer "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser*, 422 U.S. at 402 (finding § 1983 action moot because plaintiff complained of being illegally transferred from medium to

7

maximum security prison, but was transferred back to medium security prison while case was pending). Plaintiff seeks the following relief from this Court:

> Plaintiff recognizes that she may seek injunctive relief against the Defendant only after the Plaintiff obtains a declaratory decree from this Court holding that Defendant's actions have violated Plaintiff's due process rights in violation of Section 1983. Plaintiff does not seek retroactive relief; *she seeks a decree to afford her a basis for injunctive relief in the event there are further due process violations.*

[DE 13-1 at 291-292] (emphasis added).

But, because Judge Brown recused from Plaintiff's underlying state case, there can be no further due process violations, and no future basis for requesting injunctive relief. In other words, the Court cannot give Plaintiff the relief sought because the Court will never have occasion to enjoin Judge Brown. *See Pancake v. McCarthy*, 806 F. Supp. 378, 379-380 (E.D.N.Y. 1992) (finding § 1983 action moot because state court judge, who allegedly violated plaintiff's rights, was no longer on the bench); *see also Campbell-Ewald Co.*, 136 S. Ct. at 669 (2016) ("A case becomes moot, however, 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'") (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307, (2012)). Thus, a declaratory judgment by this Court would be nothing more than an advisory opinion, which this Court is prohibited from issuing. *In re Livensparger*, No. DK 12-10361, 2015 WL 1803922, at *2 (Bankr. W.D. Mich. Apr. 17, 2015) ("Advisory opinions, after all, are anathema to the federal courts").

*Adams v. McIlhany*, 764 F.2d 294 (5th Cir.1985) is on point. There, the plaintiff sued a state court judge under 42 U.S.C. § 1983 after he sentenced her to jail for contempt. In her suit, plaintiff sought a declaratory judgment for the finding of contempt and jail time. *Id.* at 296. The Fifth Circuit upheld the district court's dismissal of the suit for mootness and found "[t]he fact that it is most unlikely that [Plaintiff] will again come into conflict with [the state court judge] in

circumstances similar to the ones presented here, and with the same results, precludes a finding that there was 'sufficient immediacy and reality here to warrant an action for declaratory relief.'" *Id.* at 299 (quoting *Maryland Casualty Co.*, 312 U.S. at 273).

Like *Adams*, this case lacks "sufficient immediacy and reality" to warrant declaratory relief because Judge Brown recused herself, and Plaintiff will therefore not come into conflict with Judge Brown in "circumstances like the ones presented here, and with the same results." In fact, because Judge Brown recused herself, it is impossible for her, in her official capacity, to continue allegedly violating Plaintiff's rights. Simply put, Judge Brown's alleged pattern of unconstitutional violations, leading to her alleged illegal communication with Judge Delahanty, cannot occur in the future because she no longer presides over Plaintiff's case.

**B.**     ***Rooker-Feldman***

Even if the Plaintiff's claim were not moot, they would likely be barred, at least in part, under the *Rooker-Feldman* doctrine. The *Rooker-Feldman doctrine* is "is confined to cases . . . brought by state-court losers complaining of injuries caused by *state-court judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added). To determine whether a claim is barred, the district court must look to the "source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine . . . prevent[s] the district court from asserting jurisdiction. *McCormick v. Braverman*, 451 F.3d 382, 393 (2006). *Rooker-Feldman* applies "when a plaintiff asserts before a federal district court that a state court judgement itself was unconstitutional or in violation of federal law." *Id.* at 395.

9

Plaintiff's first allegation in Count 1 is that "[t]he actions of the Defendant is [sic] imposing a thirty (30) day jail sentence on the Plaintiff and revoking two (2) days of that sentence, violate the Plaintiff's right to due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution because the Plaintiff did not violate the conditional discharge order regarding visitation." [DE 1 at 20]. The source of injury is Judge Brown's "state court decision," *McCormick*, 451 F.3d at 393, imposing the sentence and holding her in contempt. *Rooker-Feldman* thus bars this claim. *See Goffstein v. Sieve*, No. 1:16-CV-341, 2016 WL 3090707, at *5 (S.D. Ohio June 2, 2016) (finding *Rooker-Feldman* barred plaintiff's claim because plaintiff did "not allege that [the judge] failed to give her proper notice, denied her the right to present evidence, or denied her other procedural protections," but instead "object[ed] to the substance of his decisions").

## C. Declaratory Judgment Act

Further, even if the requested relief was not rendered moot, this Court would decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act (the "Act"). Under the Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).[6] While the Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004).

This court considers five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act jurisdiction is appropriate. *Grand Trunk W.R.R. Co. v.*

---

[6] The Act does not provide an independent basis for subject matter jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Thus, an action brought under the Declaratory Judgment Act must invoke an independent basis for federal jurisdiction. Here, Plaintiff alleges federal question under 28 U.S.C. § 1983 as the basis for the Court's subject matter jurisdiction.

*Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks omitted). The Court must balance the five factors and "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Id.* at 563; *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

### 1. *Whether the declaratory action would settle the controversy and clarify the legal relations*.

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. Because "it is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 18-5545, 2019 WL 3955847, at *6 (6th Cir. Aug. 22, 2019) (citing *Flowers*, 513 F.3d at 557; *Bituminous*, 373 F.3d at 814; and *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

Plaintiff asserts the declaration sought in the Amended Complaint would settle the controversy by "establishing a basis for injunctive relief should the Defendant violate Plaintiff's rights again." [DE 13-1, at 293]. That said, Judge Brown recused herself from Plaintiff's state court custody case and is thus no longer presiding over it. As a result, declaratory relief would neither settle any future controversy, nor serve any purpose in clarifying legal relations. *Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012)(Declaratory relief cannot settle the controversy where underlying state court proceedings have concluded and defendant Judge recused himself). These factors weight against jurisdiction.

### 2. *Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata.*

Next, the Court must consider "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for res judicata." *Flowers*, 513 F.3d at 558. This factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). The Sixth Circuit generally does not find procedural fencing if the declaratory-plaintiff filed after the start of litigation in state court. *Cole's Place, Inc.*, 2019 WL 3955847, at *8. Moreover, if there is no evidence of procedural fencing, the Sixth Circuit typically finds the factor "neutral" in the analysis and does not weigh heavily. *Id.* Here, there is no evidence of procedural fencing as this action was filed after the state court litigation. This factor is thus neutral.

### 3. *Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction.*

The fourth *Grand Trunk* factor addresses "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, at 559. This factor is divided into three sub-parts. *Id.* at 560 (citing Bituminous, 373 F.3d at 814–15).

    a. <u>Whether the Underlying Factual Issues are Important to an Informed Resolution of the Case.</u>

The first sub-part "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Here, Plaintiff alleges she was denied due process of law in state domestic relations litigation resulting in her incarceration for two days following a contempt hearing. Plaintiff alleges that Judge Brown's rulings on various evidentiary issues—denying

12

Plaintiff's request to call certain witnesses, present certain evidence, and ask certain questions of a witness—denied her due process of law under the Fifth and Fourteenth Amendments of the United States Constitution. [DE 1 at 20–21]. Plaintiff further alleges Judge Brown violated her Constitutional rights when she imposed a thirty-day jail sentence and revoked two days of that sentence without issuing written findings. [DE 1 at 19–20]. Plaintiff also alleges Judge Brown violated her rights under the Fifth and Fourteenth Amendment of the United States Constitution by maliciously intervening, under color of state law, in a separate action Plaintiff had instituted to expunge the criminal conviction that resulted from the contempt order. [DE 8, at 209–11].

Plaintiff appealed the three state court judgments that relate to the issues raised in this action to the Kentucky Court of Appeals. [DE 14-2, 14-3, 14-4].[7] Because Plaintiff is challenging evidentiary rulings of the Judge Brown in the underlying custody case, it is likely,[8] from what the Court can discern, that factual issues involved in the appeals would impact an informed resolution of this case. This sub-part weighs against exercising jurisdiction.

>  b. <u>Whether the State Trial Court is in a Better Position to Evaluate Those Factual Issues than is the Federal Court.</u>

The second sub-part examines "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id*. Here, the case arises out of a custody dispute and Plaintiff claims to raise a federal question of law under 28 U.S.C. § 1983. State courts are as competent as federal courts to address claims arising under the federal constitution, including the

---

[7] "Federal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (*quoting Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969).
[8] Certainly there can be no question that a declaration as to Plaintiff's Count 1 would require factual determinations from the underlying case for an informed resolution of the case as Plaintiff is seeking. It would require, at least in part, a declaration that the state court's ruling on the merits were incorrect as to whether Plaintiff violated the visitation order. As discussed above, the Court likely would not even have subject-matter jurisdiction of this claim under the *Rooker-Feldman* doctrine.

merits of constitutional claims arising in the context of a child custody dispute. *See Rizzo v. Goode,* 423 U.S. 362, 380 (1976); *Coats v. Woods*, 819 F.2d 236, 237 (9th Cir.1987), *cert. denied,* 484 U.S. 802 (1987). This subpart is neutral.

> c. <u>Whether There is a Close Nexus Between Underlying Factual and Legal Issues and State Law and/or Public Policy, or Whether Federal Common or Statutory Law Dictates a Resolution of the Declaratory-Judgment Action</u>

The third sub-part "focuses on whether the issue in this federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. When the relief request would require intervention in ongoing state judicial proceedings that concern important state interests, federal courts should refrain from exercising jurisdiction as a matter of comity. *Pulliam v. Allen,* 466 U.S. 522, 541–42 (1984); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627 (1986). Here, the underlying action is a child custody case. Certainly, the state has a strong interest in addressing questions of the welfare and best interests of children involved in custody disputes. the strong interest of the states in addressing such questions without interference. *See Huynh Thi Anh v. Levi*, 586 F.2d 625, 632 (6th Cir. 1978)(recognizing state interest in resolving domestic relations matters and strong policies of federal-state comity). The sought declaration over a state court judge raises comity concerns and as noted above, would do nothing to protect Plaintiff's rights given the Judge Brown's recusal from the underlying custody case. This subpart weighs heavily in favor of declining jurisdiction.

As two of the three sub-factors weights against exercising jurisdiction and the other is neutral, the fourth *Grand Trunk* factor counsels against exercising jurisdiction.

4. ***Whether there is an alternative remedy which is better or more effective.***

The final factor asks "whether there is an alternative remedy which is better or more effective" than federal declaratory relief. *Grand Trunk*, 746 F.2d at 326. "[I]f an alternative

14

remedy is better or more effective," the district court should decline to exercise jurisdiction. *Id*. A better alternative may exist where "state law offers a declaratory remedy or if [the] issues can be litigated in state-court indemnity actions." *Cole's Place*, 2019 WL 3955847, at *10, citing *Bituminous*, 373 F.3d at 816; and *Travelers*, 495 F.3d at 273.

When, as here, a litigant believes that a judge violates the litigant's constitutional rights, that litigant's method of recourse is to appeal the adverse decision, not collaterally attack it through an action against the state judge under Section 1983. *Allen v. Bello*, No. CV140760FLWDEA, 2016 WL 1670927, at *14–15 (D.N.J. Apr. 27, 2016), aff'd sub nom. *Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017). As noted above, state courts are as competent as federal courts to address claims arising under the federal constitution. *See Rizzo*, 423 U.S. at 380. As the Eighth Circuit has explained:

> Federal courts (except for the Supreme Court) are not superior to state courts, or higher in any theoretical order of precedence. Federal law is supreme and, if valid, supersedes state law no matter what court declares it. Federal law declared by a state court, for example, is supreme over state law declared by a federal court. It is not the forum that counts, but the law-making authority. Making state judges defendants in a federal court unnecessarily undermines this cornerstone of our federal system.

*R.W.T. v. Dalton*, 712 F.2d 1225, 1233 (8th Cir. 1983) *cert. denied*, 464 U.S. 1009 (1983). (internal quotation marks and citation omitted). Here, Plaintiff has a clear alternative remedy in an appeal to the Kentucky Court of Appeals under Kentucky Rule of Civil Procedure 72.02. Indeed, Plaintiff appealed the three state court judgments that relate to the issues raised in this action to the Kentucky Court of Appeals. [DE 14-2, 14-3, 14-4]. The underlying child custody dispute is ongoing. Given concerns of comity and the underlying appeals pending with the Kentucky court, the alternative remedy is better and more effective. As a result, this factor weighs against federal discretionary jurisdiction.

### 5. *Balancing the Grand Trunk factors.*

As noted above, the Sixth Circuit has never indicated the relative weight of the factors; instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Cole's Place*, 2019 WL 3955847, at *5; citing *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). Further, "[t]he essential question is always whether [the court] has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.*, citing *Hoey,* 773 F.3d at 759 (citation omitted). Here, however, all but the third *Grand Trunk* factor counsel against exercising jurisdiction. Thus, even if the declaratory relief sought were not moot, the Court would decline to exercise jurisdiction and dismiss the case.

### IV. CONCLUSION

For the reasons above, and the Court being otherwise sufficiently advised, **THE COURT ORDERS** that Defendant's Motions to Dismiss, [DE 7; DE 12], are **GRANTED**. This is a **FINAL AND APPEALABLE ORDER**, there being no just cause for delay. The Court will enter a separate Judgment.

Rebecca Grady Jennings, District Judge
United States District Court

September 25, 2019

16